IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| Morris | Schneider | Wittstadt Va., PLLC, a ) | |
| Virginia professional limited liability ) | Case No. 15-33370 |
| company, et al., ) | |
| ) | (Joint Administration Pending) |
| Debtors.[1] ) | |

**MOTION OF THE DEBTORS AND DEBTORS-IN-POSSESSION FOR
ENTRY OF AN ORDER (I) EXTENDING THE TIME TO FILE SCHEDULES
AND STATEMENTS OF FINANCIAL AFFAIRS AND (II) EXTENDING
THE TIME TO SCHEDULE THE MEETING OF CREDITORS**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by their undersigned counsel, file this motion (the "Motion") for entry of an order pursuant to sections 105(a) and 521 of Title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code"), Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 1007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Eastern District of Virginia (the "Local Bankruptcy Rules"), (i) granting the Debtors additional time within which to file their schedules of assets and liabilities and statements of financial affairs (the "Schedules and Statements") and (ii) authorizing the Office of the United States Trustee for the Eastern District of Virginia (the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Morris | Schneider | Wittstadt Va., PLLC (1651), Morris | Schneider | Wittstadt, PLLC (1589), Wittstadt Title & Escrow Company, L.L.C. (3831), Morris | Schneider | Wittstadt, LLC (1589), MSWLAW, Inc. (6994), Teays Valley Trustees, LLC (9830), and York Trustee Services, LLC (8058).

7910706/2

| | |
|---|---|
| Augustus C. Epps, Jr., Esquire (VSB No. 13254) | Jeffrey R. Waxman, Esquire |
| Jennifer M. McLemore, Esquire (VSB No. 47164) | Eric J. Monzo, Esquire |
| Margaret X. Yang, Esquire (VSB No. 88596) | MORRIS JAMES LLP |
| CHRISTIAN & BARTON, LLP | 500 Delaware Avenue, Suite 1500 |
| 909 East Main Street, Suite 1200 | Wilmington, Delaware 19801 |
| Richmond, Virginia 23219-3095 | Telephone: (302) 888-6800 |
| Telephone: (804) 697-4100 | Facsimile: (302) 571-1750 |
| Facsimile: (804) 697-6112 | |

*Proposed counsel to Debtors and Debtors-in-Possession*

"UST") to schedule the meeting of creditors under section 341 of the Bankruptcy Code after the forty (40) day deadline imposed by Bankruptcy Rule 2003(a). In support of this Motion, the Debtors rely on the Declaration of Mark Wittstadt, Esquire in support of the Debtors' Chapter 11 Petitions and First Day Pleadings (the "Wittstadt Declaration"), and in further support of this Motion, the Debtors submit as follows:

## JURISDICTION, VENUE AND PREDICATES FOR RELIEF

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157 (b)(2).

2. The predicates for the relief requested herein are sections 105(a), 341, and 521 of the Bankruptcy Code, Bankruptcy Rules 1007 and 2003 and Local Bankruptcy Rules 1007-1 and 2003 for the United States Bankruptcy Court for the Eastern District of Virginia (the "Court").

## BACKGROUND

3. On the date hereof (the "Petition Date"), each of the Debtors filed with the Court its respective voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the above-captioned chapter 11 cases (the "Cases"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. No creditors' committee has been appointed in these cases, and no trustee or examiner has been appointed.

5. Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of their chapter 11 cases.

6.      A full description of the Debtors' business operations, corporate structures, capital structures, and reasons for commencing these cases is set forth in full in the Wittstadt Declaration, which was filed contemporaneously herewith and which is incorporated herein by reference. Additional facts in support of the specific relief sought herein are set forth below.

### A.    The Debtors' Businesses

7.      Mark Wittstadt, Esquire and Gerard Wm. Wittstadt, Jr., Esquire (together with Mark Wittstadt, the "Wittstadts") are equity holders, members, or managers of all of the Debtors. Specifically, the Wittstadts each own 50% of MSWLAW, Inc. ("MSWLAW"), a Georgia corporation. MSWLAW is a holding company which is the sole member of each of the following: Morris | Schneider | Wittstadt, LLC a Georgia LLC ("MSW"), Morris | Schneider | Wittstadt Va., PLLC, a Virginia professional limited liability company, and Morris | Schneider | Wittstadt, PLLC, a West Virginia professional limited liability company. MSW, a law firm, and its related debtor affiliates, specialized in real estate closings and real estate foreclosures. At their peak, the Debtors employed more than 150 attorneys and more than 700 para-professional staff members, and operated from more than 50 offices across thirteen states.

8.      In addition to their interest in MSW, the Wittstadts each own a 50% membership interest in the following Debtors: (i) Teays Valley Trustees, LLC, a West Virginia LLC and (ii) Wittstadt Title & Escrow Company, L.L.C., a Virginia LLC. Additionally, the Wittstadts each own a 25% membership in York Trustee Services, LLC, a Tennessee limited liability company with 25% owned by MSWLAW, and the final 25% owned by Barry King. Each of these three entities operated by serving as a substitute trustee in non-judicial foreclosures in Georgia, West Virginia, Virginia, and Tennessee, respectively.

3

### B. Cause of the Debtors' Bankruptcy Filing

9. Specifically, and more greatly detailed in the Wittstadt Declaration, on or about July 29, 2014, the Wittstadts, each of whom is a manager of MSW and a shareholder of MSWLAW, the sole member of MSW, first learned that there was an issue with respect to certain financials with respect to certain of the firm's bank accounts. The Wittstadts subsequently learned that Nathan Hardwick, IV ("Mr. Hardwick"), then a manager of MSW and the majority shareholder of MSWLAW, directly or indirectly caused that the firm to "over disburse" to Mr. Hardwick more than $20,000,000 from the firm's escrow accounts for his personal use (including payments remitted directly to casinos and on account of private jets for the personal use of Mr. Hardwick, his girlfriend and family).

10. Mr. Hardwick's "over disbursement" directly and proximately created a confluence of issues. First and foremost, withdrawal of trust funds justifiably caused title companies and banks from whom the overwhelming majority of the Debtors' work originated to cease to provide new matters to MSW. Moreover, the title companies and banks each withdrew active files from MSW.

11. Second, immediately after the Wittstadts learned of the "over disbursement," Mr. Hardwick pledged that he would personally return the money to the firm. Mr. Hardwick represented that the amounts of his "over disbursements" did not exceed $6.5 mil. Notwithstanding that the Wittstadts expressly directed that Mr. Hardwick was not authorized to borrow the money necessary to repay the "over disbursement" by pledging firm assets, Mr. Hardwick did just that. On August 4, 2014, Mr. Hardwick, through his personal company, Divot Holdings, LLC ("Divot"), borrowed $2 mil. from James Prichard ("Mr. Prichard") at a rate of 15%. Further, Mr. Hardwick allegedly caused MSW to guarantee the Prichard loan. On

August 6, 2014, Mr. Hardwick also allegedly borrowed $3 mil. from Dustin Johnson ("<u>Mr. Johnson</u>") at a rate of 12% and allegedly had MSW guarantee the loan. The alleged "guarantees" were not known to either of the Wittstadts until after Mr. Hardwick resigned his position with the companies and MSW was presented with demands for payment on account of these so-called loans.

12. As a result of Mr. Hardwick's allegedly causing MSW to guarantee the loans from Mr. Prichard and Mr. Johnson, MSW is now the subject of separate lawsuits by Mr. Prichard and Mr. Johnson. The action by Mr. Prichard against MSW, Mr. Hardwick, and Divot is pending in the Superior Court of Fulton County, State of Georgia (Civil Action No. 2014-CV-25435). On June 10, 2015, the Fulton County Superior Court entered an order and judgment on Mr. Prichard's motion for partial summary judgment solely as to defendant MSW. Specifically, the Court granted judgment for Mr. Prichard against MSW in the amount $2,616,454.19, including all outstanding principal, interest and fees, with interest and fees accruing at the rate of $1,134.24 per day. The deadline to appeal the judgment was July 9, 2015. On July 2, 2015, the Debtors filed a notice of appeal. The Debtors intend to file a suggestion of bankruptcy in the Fulton County Superior Court and the appellate court.

13. In Mr. Johnson's lawsuit pending in the United States District Court for the Northern District of Georgia, Atlanta Division (Civil Action No. 2014-CV-252435), against MSW, MSWLAW, Mr. Hardwick, and the Wittstadts, Mr. Johnson seeks payment of the $3 mil. "loaned" to MSW, plus interest and costs. It should be noted that, to this day, the Wittstadts, MSW, and MSWLAW have never seen any written loan documents executed by anyone in connection with this "loan." MSW, MSWLAW, and the Wittstadts anticipate that each will have a claim against Mr. Johnson and his counsel for claims and representations asserted in the

5

Original Complaint and the Amended Complaint. A motion by MSW, MSWLAW, and the Wittstadts to dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure is presently under advisement before the District Court.

14. As result of the loss of business directly and proximately caused by Mr. Hardwick's actions, on or about August 25, 2014, MSWLAW was forced to enter into a contribution agreement whereby MSWLAW transferred 70% of its interest in Landcastle Title, LLC ("Landcastle Title")[2] to Landcastle Acquisition Corp., an affiliate of Fidelity National Financial, Inc. ("FNF"). Landcastle Title was an integral – and profitable – part of the Debtors' business as it served as the title agent that issued the title insurance for the Debtors' closing businesses. Additionally, Landcastle Title served as a title abstracting company used by MSW to get its title abstracts to use for closings. Prior to being sold, Landcastle was earning approximately $300,000 per month.

15. Faced with the need to cover a shortfall from the firm's escrow accounts caused by Mr. Harwick's so-called "over disbursements," in exchange for 70% of its interest in Landcastle Title, MSWLAW received, among other things, $1 plus FNF's assumption of the obligation to cover any and all shortfall in escrow accounts (which was estimated to be approximately $28 mil.). Additionally, on the effective date of the transaction, MSW agreed to loan $1,500,000 to Landcastle Title, and MSW agreed to assume $1,300,000 of the obligations on account of a loan to Mr. Hardwick which was to be repaid to FNF in sixty monthly installments. Significantly, as part of the transaction, FNF obtained all rights to assert certain claims against and collect upon any judgment against Mr. Hardwick and others resulting from

---

[2] The remaining 30% was subsequently transferred to Landcastle Acquisition Corp. on or about April 1, 2015.

any shortfalls from the escrow accounts and unauthorized withdrawals and distributions to Mr. Hardwick.[3]

16.  As much as the loss of revenue immediately and irreparably harmed the Debtors, the public perception of the firm was also significantly stunted, particularly given the publicity of the lawsuits by Mr. Prichard and Mr. Johnson, and the transaction with FNF.  Given the Hobson's choice of the loss of the profitable Landcastle business or the immediate need to cover a shortfall of more than $20 mil. of trust funds missing, MSWLAW chose to part with a significant asset.

17.  The fact of Mr. Hardwick's unauthorized disbursements from trust accounts were devastating to the firm, however it was not a death sentence.  FNF publicly backed the escrow accounts, the perpetrator of the defalcation was removed from the firm, and the firm was able to convince many of its clients that the firm would be able to survive and thrive again.  While many of the firm's largest customers were, for a time, willing to continue to allow the firm to retain certain files (and even provide the firm with new matters), the publicity surrounding Mr. Johnson's lawsuit and the false statements made by his counsel alleging criminal conduct by the Wittstadts were too much for even an otherwise successful firm like MSW to bear.  The false allegations made by Mr. Johnson and his attorneys led a number of MSW (and the Wittstadts') clients to contact them and advise that they could not do business with MSW anymore and would be terminating the relationship and transferring their files to new counsel unless MSW found a new firm with which to merge before December 31, 2014.  Accordingly, MSW quickly sought to merge with another firm that also did foreclosure work on a national platform.

---

[3]  On August 25, 2014, MSW and Landcastle Title, LLC (also naming Morris | Hardwick | Schneider, LLC, MSW's predecessor, as a plaintiff) filed a complaint in the Superior Court of Fulton County, Georgia against Mr. Hardwick, Divot, and John Doe 1-10 (Civil Case No. 2014-CV-250583).

18.     Concerned about its employees, on or about January 28, 2015, MSW entered into an agreement for the sale of its foreclosure, bankruptcy and eviction operations to Butler & Hosch, P.A. ("B&H"), including the assumption of MSW's lease obligations, in exchange for an unsecured promissory note of $2,072,167.24. As part of the merger, the client files were turned over to B&H, and the majority of the attorneys who formerly worked for MSW, including the Wittstadts, became employees of B&H. Unfortunately, almost immediately after the agreement was signed, but before the transition period had ended, the Wittstadts learned that B&H created false invoices for reviewing each file to be transitioned from MSW to B&H, which B&H surreptitiously used for the purposes of factoring through its secured lender to obtain loans.

19.     On May 14, 2015, B&H, together with fifteen of its related entities filed an assignment for the benefit of creditors (the "B&H ABC"). The Assignee appointed in the B&H ABC, Michael Moecker, has since filed a motion (the "B&H Turnover Motion") in the B&H ABC seeking to compel MSW, the Wittstadts, and Lee Jones, MSW's information technology officer, to turn over certain assets and records – which is disputed. Additionally, separate suits have been filed in Maryland against the Debtors (and in one instance, against Debtors' principals and a key employee) to turn over funds that are being held by MSW. Late on Thursday, July 2, 2015, counsel for the Assignee in the B&H ABC, advised that he would be withdrawing the B&H Turnover Motion; however there remain multiple parties who have asserted a right to the same money and assets. MSW believes that turning over assets to any single party would expose the Debtors, and possibly their principals, member, and managers, to further legal exposure. Further, MSW believes that some, if not all, of the funds presently being held by MSW are assets of MSW (or its customers). These lawsuits have exacerbated the need for the Debtors to seek relief under Chapter 11 in order to obtain bre.athing space necessary to maximize the estates'

8


assets, including potential claims and causes of action.

20. At their peak, the Debtors once employed over 850 people. As of July 2, 2015, the Debtors were reduced to 128 employees, including 33 attorneys[4] and 95 staff members. In the weeks immediately prior to the bankruptcy filing, the overwhelming majority of the attorneys and staff announced that they were voluntarily leaving for other jobs, effective July 2, 2015. As of the Petition Date, the Debtors will have 36 employees including 5 attorneys and 31 staff members. Further, the Debtors, which once operated out of twenty offices, will be operating out of only four offices.[5]

## RELIEF REQUESTED

21. By this Motion, the Debtors respectfully request entry of the Order (i) extending by an additional thirty (30) days the date by which each of the Debtors' Schedules and Statements must be filed and (ii) authorizing the UST to schedule the meeting of creditors under section 341 of the Bankruptcy Code after the forty (40) day deadline imposed by Bankruptcy Rule 2003(a).

## BASIS FOR RELIEF REQUESTED

22. Pursuant to section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and Local Rule 1007-1(C), the Debtors are required to file their Schedules and Statements within fourteen (14) days from the date of the bankruptcy petition's filing.

23. Bankruptcy Rules 1007(a)(5) and (c), however, authorize the Court to grant an extension of the date by which the Schedules and Statements must be filed for cause upon the filing of a motion. In addition, section 105(a) of the Bankruptcy Code provides that the Court

---

[4] Attorneys include partners of MSW.

[5] Substantially contemporaneously herewith, the Debtors have filed a motion to reject certain of their leases.

9

"may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the [Bankruptcy Code]." 11 U.S.C. § 105(a).

24. Here, the Debtors submit that cause exists for the Court to enter the Order extending the time for filing their Schedules and Statements for thirty (30) days, without prejudice to their ability to request additional time should it become necessary.

25. The Debtors therefore request that the Court extend the 14-day period to file Schedule and Statements for an additional thirty (30) days, through August 18, 2015, without prejudice to the Debtors' right to seek further extensions.

26. Creditors and other parties in interest will not be harmed by the proposed extension of the filing deadline, because, even under the extended deadline, the Schedules and Statements would be filed in advance of any planned bar date or other significant event in these chapter 11 cases.

27. In addition, Local Bankruptcy Rule 1007-1(C) allows this Court to enter an order extending the time by which the Debtors must file their Schedules, "to not later than the seventh day prior to the scheduled meeting of creditors." *Id.* Bankruptcy Rule 2003(a) provides that in a chapter 11 case the UST "shall call a meeting of creditors to be held no fewer than 21 and no more than 40 days after the order for relief." *Id.* The Debtors anticipate that the UST will soon schedule the meeting of creditors required by section 341 of the Bankruptcy Code in accordance with Bankruptcy Rule 2003(a), but that the UST may desire to instead schedule the meeting after such 40-day period. To the extent such relief is necessary, the Debtors also hereby request that the Court authorize the UST to schedule the Section 341 meeting after the 40-day deadline imposed by Bankruptcy Rule 2003(a).

28. Relief similar to that requested herein has been granted by bankruptcy courts in Virginia. *See, e.g.*, *In re Patriot Coal Corp.*, No. 15-32450 (KLP) (Bankr. E.D. Va. May 14, 2015) (granting a 45-day total extension to file statements and schedules without more caused the Debtors to hold at least two meetings of creditors); *In re James River Coal Co.,* No. 14-31848 (KRH) (Bankr. E.D. Va. Apr. 10, 2014) (granting 60-day extension and authorizing the U.S. Trustee to convene the section 341 meeting on a date that is more than 40 days after the commencement date); *In re AMF Bowling Worldwide, Inc.*, Case No. 12-36495 (KRH) (Bankr. E.D. Va. Nov. 14, 2012) (granting a 45-day extension and authorizing the U.S. Trustee to convene the section 341 meeting 65 days after commencement date).

29. For the foregoing reasons, the Debtors respectfully request that the Court grant the Debtors' request for a 30-day extension by which to file the Schedules and Statements and authorize the U.S. Trustee to schedule the 341 meeting after the 40-day deadline imposed pursuant to Bankruptcy Rule 2003(a).

**NOTICE**

30. The Debtors have served notice of the Motion on (a) the U.S. Trustee; (b) all known creditors holding secured claims against the Debtors' estates; (c) those creditors holding the 30 largest unsecured claims against the Debtors' estates on a consolidated basis; and (d) any parties having a particular interest in this Motion.

**WAIVER OF MEMORANDUM OF LAW**

31. The Debtors respectfully request that this Court treat this Motion as a written memorandum of points and authorities or waive any requirement that this Motion be accompanied by a written memorandum of points and authorities as described in Local Bankruptcy Rule 9013-1(G).

## NO PREVIOUS REQUEST

32. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, a copy of which is attached hereto: (i) granting the Motion; (ii) extending by an additional thirty (30) days the date by which the Schedules and Statements must be filed; (iii) authorizing the UST to schedule the meeting of creditors under section 341 of the Bankruptcy Code after the forty (40) day deadline imposed by Bankruptcy Rule 2003(a); and (iv) granting to the Debtors such other and further relief as is just and proper.

DATED: July 6, 2015                                    Respectfully submitted,


/s/ Jennifer M. McLemore
Augustus C. Epps, Jr., Esquire (VSB No. 13254)
Jennifer M. McLemore, Esquire (VSB No. 47164)
Margaret X. Yang, Esquire (VSB No. 88596)
CHRISTIAN & BARTON, LLP
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone:  (804) 697-4100
Facsimile:  (804) 697-6112

-and-

Jeffrey R. Waxman, Esquire (Pro Hac Vice Pending)
Eric J. Monzo, Esquire (Pro Hac Vice Pending)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
Telephone:  (302) 888-6800
Facsimile:  (302) 571-1750

Proposed Counsel to Debtors
and Debtors-in-Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| Morris \| Schneider \| Wittstadt Va., PLLC, a ) | |
| Virginia professional limited liability ) | Case No. 15-33370 |
| company, et al., ) | |
| ) | (Joint Administration Pending) |
| Debtors.[6] ) | |

**ORDER (I) EXTENDING THE TIME TO FILE SCHEDULES
AND STATEMENTS OF FINANCIAL AFFAIRS AND (II) EXTENDING
THE TIME TO SCHEDULE THE MEETING OF CREDITORS**

Upon the motion (the "Motion")[7] of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") for entry of an order, pursuant to sections 105(a) and 521 of the Bankruptcy Code, Bankruptcy Rule 1007 and Local Rule 1007-1, (i) granting the Debtors additional time within which to file their schedules of assets and liabilities and statements of financial affairs (the "Schedules and Statements") and (ii) authorizing the Office of the United States Trustee for the Eastern District of Virginia (the "UST") to schedule the meeting of creditors under section 341 of the Bankruptcy Code after the forty (40) day deadline imposed by Bankruptcy Rule 2003(a); the Court finds that (a) it has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334(b); (b) this is a core proceeding pursuant to 28

---

[6] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Morris | Schneider | Wittstadt Va., PLLC (1651), Morris | Schneider | Wittstadt, PLLC (1589), Wittstadt Title & Escrow Company, L.L.C. (3831), Morris | Schneider | Wittstadt, LLC (1589), MSWLAW, Inc. (6994), Teays Valley Trustees, LLC (9830), and York Trustee Services, LLC (8058).

[7] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

| | |
|---|---|
| Augustus C. Epps, Jr., Esquire (VSB No. 13254) | Jeffrey R. Waxman, Esquire |
| Jennifer M. McLemore, Esquire (VSB No. 47164) | Eric J. Monzo, Esquire |
| Margaret X. Yang, Esquire (VSB No. 88596) | MORRIS JAMES LLP |
| CHRISTIAN & BARTON, LLP | 500 Delaware Avenue, Suite 1500 |
| 909 East Main Street, Suite 1200 | Wilmington, Delaware 19801 |
| Richmond, Virginia 23219-3095 | Telephone: (302) 888-6800 |
| Telephone: (804) 697-4100 | Facsimile: (302) 571-1750 |
| Facsimile: (804) 697-6112 | |

*Proposed counsel to Debtors and Debtors-in-Possession*

U.S.C. § 157(b)(2); (c) the relief requested in the Motion is in the best interest of the Debtors, their estates and creditors; (d) venue of this proceeding and over this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; (e) proper and adequate notice of the Motion and the hearing thereon has been given and no other or further notice is necessary; and (e) upon the record herein after due deliberation thereon, good and sufficient cause exists for the granting of the relief as set forth herein. Therefore, IT IS HEREBY

ORDERED THAT the relief requested in the Motion is GRANTED; and it is further

ORDERED THAT the time in which the Debtors shall file their Schedules and Statements is extended for an additional thirty (30) days, through and including August 18, 2015, without prejudice to the Debtors' right to seek further extensions upon a showing of cause therefor; and it is further

ORDERED THAT the UST is authorized to schedule the meeting of creditors required by section 341 of the Bankruptcy Code on a date that is more than forty (40) days after the Petition Date; and it is further

ORDERED THAT the Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order; and it is further

ORDERED THAT notice of the Motion as provided therein shall be deemed good and sufficient notice of the Motion; and it is further

ORDERED THAT notwithstanding any Bankruptcy Rule or Local Bankruptcy Rule that might otherwise delay the effectiveness of this Order, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED THAT the requirement under Local Bankruptcy Rule 9013-1(G) to file a memorandum of law in connection with the Motion is hereby waived; and it is further

ORDERED THAT this Court shall retain exclusive jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Order.

Dated:  This _____ day of _____, 2015

_____
UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

_____
Augustus C. Epps, Jr., Esquire (VSB No. 13254)
Jennifer M. McLemore, Esquire (VSB No. 47164)
Margaret X. Yang, Esquire (VSB No. 88596)
CHRISTIAN & BARTON, LLP
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone:  (804) 697-4100
Facsimile:  (804) 697-6112

    -and-

Jeffrey R. Waxman, Esquire (Pro Hac Vice Pending)
Eric J. Monzo, Esquire (Pro Hac Vice Pending)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
Telephone:  (302) 888-6800
Facsimile:  (302) 571-1750

Proposed Counsel to
Debtors and Debtors in Possession

**CERTIFICATION OF ENDORSEMENT
UNDER LOCAL BANKRUPTCY RULE 9022-1(C)**

I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

3